UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HANSEN HELICOPTERS, INC., | § | |
| JOHN D. WALKER, JR., and | § | |
| PHILLIP T. KAPP | § | |
| | § | |
| v. | § | CAUSE NO. 3:19-cv-01617 |
| | § | |
| DOUGLAS DYMOCK, ZURVOHN MALOOF, | § | |
| MICHAEL ("MIKE") BOLER, | § | |
| PETER PROZIK AND FIVE UNKNOWN | § | |
| AGENTS OF THE FEDERAL AVIATION | § | |
| ADMINISTRATION'S SPECIAL | § | |
| EMPHASIS INVESTIGATIONS TEAM, | § | |
| FEDERAL BUREAU OF | § | |
| INVESTIGATION OR OFFICE OF | § | |
| INSPECTOR GENERAL OF UNITED | § | |
| STATES DEPARTMENT OF | § | |
| TRANSPORTATION, JOHN DOES 1-5 | § | |

ORIGINAL COMPLAINT AND JURY DEMAND

Hansen Helicopters, Inc., John D. Walker, Jr., and Phillip T. Kapp ("plaintiffs") file this Complaint and Jury Demand against Douglas Dymock, an agent of the Federal Aviation Administration's ("FAA") Special Emphasis Investigations Team ("SEIT"), Michael ("Mike") Boler, Supervisory Aviation Safety Inspector of SEIT, Zurvohn Maloof of the Office of Inspector General of the United States Department of Transportation (OIG-DOT), Peter Prozik of the Federal Bureau of Investigation ("FBI") and five unknown agents of SEIT, FBI and/or OIG-DOT, John Does 1-5 ("defendants").

Plaintiffs demand a jury.

INTRODUCTION

In August 2016 and previously, Dymock of SEIT announced that Walker and Hansen Helicopters were dirty and that he was going to shut them down. Dymock said he was going to keep digging until he found something he thought was wrong. Dymock

ORIGINAL COMPLAINT AND JURY DEMAND – Page 1

found nothing that was illegal.  Dymock fabricated a false view of that something was wrong and, with his co-conspirators, took the described actions against the plaintiffs.

Boler, Maloof and Prozik conspired with and participated in Dymock's scheme. Dymock, Boler, Maloof and Prozik, with the knowledge that they had information that refuted and contradicted what they were advising their superiors and law enforcement agents as justifications for legal actions against the plaintiffs, falsely created an image of plaintiffs and of their purported illegal activities and ignored facts that the plaintiffs were not liable for the allegedly illegal actions.  Dymock, Boler, Prozik and Maloof, recognizing questions about whether the United States had subject matter jurisdiction over the purported wrongs and about the plaintiffs' responsibility of alleged activities of Vanuatu corporations which they did not own, created an appearance of subject matter jurisdiction over those activities where none exists and presented false information about the plaintiffs.  The defendants made a series of material misrepresentations and material omissions upon which others justifiably relied.

The defendants propounded to others allegedly bad acts that they knew (a) were not committed by the plaintiffs, (b) that, if they were committed, were committed by third persons, the Vanuatu corporations, (c) occurred outside the territorial jurisdiction of the United States, and (d) were not violations of the laws of the United States.

Three illegal search warrants directed against Walker and Hansen Helicopters, a forfeiture action related to moneys of Hansen Helicopters, Caledonian Agency, Inc., Walker Agricola LLC and Walker, a baseless indictment of Walker and Kapp, the illegal seizure of property, and an illegal grand jury subpoena served on Hansen Helicopters resulted from the defendants' efforts.  The defendants' illegal activities, including unreasonable actions directed against third persons with whom the plaintiffs did

ORIGINAL COMPLAINT AND JURY DEMAND – Page 2

business were designed and intended to destroy the plaintiffs.  The defendants' efforts involved a pattern of misrepresentations and material omissions to United States District Courts in three jurisdictions designed to permit Dymock, Boler, Maloof and Prozik to assume the roles of investigator, judge, jury and executioner.

## JURISDICTION AND VENUE

1.      This case is brought pursuant to, *inter alia*, the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2.      Venue under 28 U.S.C. § 1391(e) is proper because a substantial part of the events or omissions giving rise to the claim occurred and SEIT is based in this District. *Maddox v. Bradley*, 345 F. Supp. 1255 (N.D. Tex. 1972).

## PARTIES

3.      Plaintiff Walker is a resident of the State of Missouri.

4.      Plaintiff Hansen Helicopters is a corporation formed in the Territory of Guam and does business in Guam.

5.      Plaintiff Kapp is a resident of Guam.

6.      Douglas Dymock is an Aviation Safety Inspector for SEIT, with his office at Suite 6S-500, SEIT, 10101 Hillwood Parkway, Fort Worth, Texas 76177.

7.      Michael ("Mike") Boler is a Supervisory Aviation Safety Inspector for SEIT, with his office at Suite 6S-500, SEIT, 10101 Hillwood Parkway, Fort Worth, Texas 76177.

8.     Zurvohn Maloof is a Special Agent of the United States Department of Transportation, Office of the Inspector General, with his office at 1675 7th Street, Room 402, Oakland, California 94615.

9.     Peter Prozik is an agent of the FBI assigned to Guam.

10.     With regard to the activities that are the subject of this Complaint, the defendants worked with special agents from the FBI, the DOT-OIG, including Michael Bishop who submitted a false affidavit to obtain a search warrant from the United States Magistrate in the Middle District of Georgia, and an agent of the Internal Revenue Service (IRS), Viranousith Khamvongoa.  Such persons are not made defendants in this action, however, discovery may reveal that such persons are, in fact, John Doe defendants, plaintiffs will seek to amend to add such persons if the facts warrant.

HELICOPTERS ON FISHING SHIPS

11.     This case involves helicopters operating on the Pacific Ocean from fishing ships.  FAA records show that the helicopters are owned by Vanuatu corporations.  The helicopters are leased for periods of time to the owners of fishing ships.

12.     The subject helicopters are owned by corporations formed in the Republic of Vanuatu.  Vanuatu is a Pacific island country located in the South Pacific Ocean. The archipelago, which is of volcanic origin, is 1,090 miles east of northern Australia, 340 miles northeast of New Caledonia, east of New Guinea, southeast of the Solomon Islands, and west of Fiji.

13.     As is known by the defendants, Hansen Helicopters was formed and operates in Guam and does not own the helicopters or the Vanuatu companies that FAA records show own or owned the subject helicopters.  Walker owns a controlling interest in and manages Hansen Helicopters.

14.     Guam is an island and unincorporated territory of the United States in the North Pacific Ocean, the largest, most populous, and southernmost of the Mariana Islands. It lies about 5,800 miles west of San Francisco and 1,600 miles east of Manila. The distance between Guam and Vanuatu is 2,495 miles.

15.     Various corporations formed in Vanuatu lease helicopters and provide pilots and mechanics to service the helicopters to large fishing ships operating in the Pacific Ocean to spot fish.  At all times, the FAA and the defendants knew from the records of the FAA that the corporations were formed in Vanuatu and invalidly had registered with FAA.

16.     To obtain official action against Walker, Kapp and Hansen Helicopters, Prozik, Maloof, Boler and Dymock advised others that they were seeking to take action against the plaintiffs on the ground that the Vanuatu corporations were owned by Walker and/or Hansen Helicopters and that, thus, the corporate existence of the Vanuatu corporations should be ignored and considered to be Hansen Helicopters and/or Walker.  These assertions are found in the Indictment, the Prozik and Bishop affidavits, the Verified Complaint for Forfeiture *In* Rem, and correspondence and reports prepared and reviewed by the defendants.

17.     Documents known to defendants contradict these statements.  In fact, the defendants reached such conclusions and made such statements based on criteria known to be false and legally insufficient.

18.     The assertions against Kapp are, in fact, that he is associated with Hansen Helicopters and Walker.  Prozik, Boler, Dymock and Maloof present no justification for their self-propounded criteria that "1. The company's address matched one of Hansen's known addresses, 2.  Walker and/or Crowe were listed as a company official."  These

ORIGINAL COMPLAINT AND JURY DEMAND – Page 5

criteria are factually and legally absurd.  Based on these legally and factually inadequate grounds, the defendants advised decision makers and others to ignore the legal existence of the Vanuatu corporations.  These overreaching assertions were made based on their assumptions that Walker and Hansen Helicopters and the other plaintiffs are bad guys.

19.    As was known by the defendants, the Vanuatu corporations are owned by Beanbag Helicopters, Inc., a Vanuatu corporation.  Beanbag Helicopters, Inc. is owned by Caledonian Insurance Co., Limited, which is owned by Hansen Northern Helicopters, Inc. with 149,999 shares and Veritatem Nominees, Limited with one share.  Hansen Northern Helicopters, Inc. is owned by Walker with 9,998 shares, Kenneth Crowe, one share, and Marvin Reed, one share.  Hansen Helicopters, Inc. owns no immediate or distant ownership interest in the Vanuatu corporations.

20.    Fishing boats lease helicopters from the Vanuatu corporations to operate from the ships and search for fish throughout the Pacific Ocean.  As known to the defendants, the helicopters operate outside United States territorial jurisdiction.

21.    Prozik, Maloof, Boler and Dymock were advised that the helicopters were engaged in multiyear contracts between the Vanuatu corporations and the fishing companies owning fishing vessels to provide helicopters and fish-searching services at sea in the Pacific Ocean.  As was known to the defendants, the ships operated in areas not subject to the territorial jurisdiction of the United States and, in fact, often operated in areas subject to the territorial jurisdiction of other countries.

22.    The ships, not controlled by the owners of the helicopters, make port about every six weeks to offload fish and to take on supplies.  The ports to which the ships go to depends on where a ship is when it has a full load of fish.  The fishing ships

ORIGINAL COMPLAINT AND JURY DEMAND – Page 6

normally operate from five degrees north or south of the Equator anywhere in the Pacific Ocean.  These facts were known to the defendants.

23.    The owners of the helicopters are formed and based in Vanuatu.  As was known by the defendants, none of the owners is a corporation or association with the following characteristics: (a) organized under the laws of the United States or a State, the District of Columbia, or a United States territory or possession, (b) of which the president and at least two-thirds of the board of directors and other managing officers are United States citizens, and (c) in which at least 75% of the voting interest is owned or controlled by persons that are United States citizens.  14 C.F.R. § 47.3.  In fact, in an affidavit executed by Prozik and in other documents created by or reviewed by Dymock, Boler and Maloof, the registration of the helicopters owned by the Vanuatu corporations with the FAA was "invalid."

24.    As is known to the defendants, where the helicopters operate and when and where the helicopters return to port is controlled by the captains of the fishing ships.  The Vanuatu corporate owners of the helicopters had no right to designate when or where a fishing ship went to a port.

INVALID REGISTRATIONS OF FISHING HELICOPTERS

25.    For years, the Vanuatu owners of the helicopters and the FAA mistakenly registered the fishing ship based helicopters with the FAA and attempted to comply with FAA regulations.  As by the defendants and sworn to by Prozik and Bishop, the Vanuatu registrations were invalid.  Prozik and Bishop swore in affidavits submitted to United States Magistrates to obtain search warrants that the FAA helicopter registrations by the Vanuatu corporations were "invalid."

26.    FAA mistakenly registered the helicopters even though the helicopters were not required and had no right to be registered with the FAA.  The fact that the registrations were at least questionable as the FAA registrations showed the owners' Vanuatu addresses and Vanuatu is not United States territory.  The records related to the helicopters on which the plaintiffs, Prozik, Dymock, Boler and Maloof focus their attention are found in the FAA's records.  The locations and the names of the owners of the fishing boat helicopters were never concealed from the FAA.  The FAA knew that the subject helicopters operated on fishing boats in the Pacific Ocean.

27.    As noted by SEIT and sworn to by agents of the FBI and the DOT-OIG, the Vanuatu registrations are invalid.  49 U.S.C. §§ 44101-103.  The remedy for an invalid registration is to return the registration.  14 C.F.R. § 47.43.  Without valid registrations, the airworthiness provisions of the FAA regulations do not apply.  "Any registered owner of a U.S.-registered aircraft . . . may apply for an airworthiness certificate for that aircraft."  This fact is known to Maloof, Boler, Dymock, Prozik and the John Doe defendants even though much of the action taken against the plaintiffs was based on FAA safety regulations related to airworthiness.

28.    As is known to the defendants, the subject helicopters are operated, serviced and repaired by a pilot and mechanic working for the owner of the helicopter on the fishing ships that leased the helicopters.  the defendants did not disclose to the Courts that the assertions made by the United States in the affidavits regarding Hansen Helicopters and parts on the helicopters owned by third persons were false because an owner/operator of an aircraft does not have to meet the standards provided to the Courts in the search warrant affidavits.

29.    The defendants failed to disclose to the Courts that with regard to parts that had been damaged previously, it is likely that the parts properly performed having been inspected by qualified mechanics.  It is likely that those parts had been salvaged for years by the then owners of the helicopters and inspected in accordance with FAA regulations or other appropriate regulatory authority before and after the purchases.

30.    By lies and omissions, the defendants created false impressions of Hansen Helicopters, Walker and Kapp with three United States Courts.  The defendants caused and assisted Federal Law Enforcement Agents to make false statements to the courts.

31.    Plaintiffs assume that Prozik, Boler, Maloof and Dymock lied to other agents of the FBI, DOT-OIG, SEIT and the IRS.

FEDERAL AVIATION ADMINISTRATION AND SEIT

32.    The FAA is an Administration of DOT.  The FAA regulates all aspects of Civil Aviation of the United States.  14 C.F.R. § 1.1.  The term "civil aircraft" means an aircraft except a public aircraft, as defined in 19 U.S.C. § 40102(41).  The FAA has four business areas: Airports, Air Traffic Organization, Aviation Safety and Office of Commercial Space Transportation.

33.    SEIT is part of the Aviation Safety business area working with and supporting the FAA's Office of Security and Hazardous Materials Safety ("ASH").  ASH coordinates the FAA's Law Enforcement Assistance Program supporting law enforcement agencies, the intelligence community, and the military on investigative and intelligence matters, counterintelligence, counterterrorism, counternarcotics, weapons smuggling, and criminal activity.

34.    ASH initiates enforcement actions against airmen and aircraft operators and/or owners that do not involve technical issues, such as alleged criminal activity by

airmen and other FAA certificate holders, unapproved aircraft parts, falsification of official documents, security violations and property theft.

35.    SEIT also works with and supports the Flight Standards Service's technical operations, airworthiness or safety of flight issues and qualifications.

36.    SEIT works within the Flight Standards National Field Office in Fort Worth, Texas.  SEIT supports other Flight Standards Service offices with information requests, assistance with enforcement investigations, and specialized technical assistance concerning matters to FAA offices and Law Enforcement Agencies.

37.    The FBI is a federal law enforcement agency.

38.    DOT-OIG has criminal prosecutorial responsibilities.

DEFENDANTS

39.    The defendants are not high level employees of the United States.  The roles the defendants played are comparable to the unknown agents in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

40.    Dymock and Boler are employed by the FAA and are part of SEIT from its Fort Worth, Texas office.

41.    DOT has about 59,000 employees.  FAA has about 46,000 employees.  It is believed that there are between 10 and 20 SEIT employees.

42.    Maloof works for DOT-OIG in Oakland, California.

43.    Prozik works for the FBI from its office in Guam.

44.    The defendants' actions violated rights clearly established in the United States Constitution, including the Fourth, Fifth, Sixth and Eighth Amendments, federal statutes, case law and FAA regulations.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 10

45.     The defendants took the specific acts designed to destroy the plaintiffs and others through violations of the right against search and seizure, denial of due process through penalizing the plaintiffs without due process, violated their rights as persons accused of unlawful activity by the United States, and inflicting unusual punishment by means that by-pass the judicial system of the United States.  Among other things, the defendants falsely presented information to federal law enforcement agents and three United States judges, in the form of affidavits, to obtain search warrants that would not be issued without the lies made to those federal law enforcement agents, and through those agents to United States judges.

46.     It is recognized in the Civil Aviation industry that SEIT members act as "vigilantes," "cops," and "cowboys" punishing companies and individuals associated with Civil Aviation based on the SEIT members' independent determinations that companies or persons need to be punished, including by losing their rights to participate in Civil Aviation in the United States.

47.      The defendants do not care about complying with the law, FAA policies or procedures or the Federal Aviation Regulations, or with statutory and constitutional protections granted to the targets of their efforts.

AMERICOPTERS

48.     An outrageous example of the defendants' approach to the factual bases provided to justify the issuance of search warrants relates to an entity referred to in the Prozik affidavits as "Americopters" against which a search warrant was issued and served.

49.     From the face of the Prozik affidavits and the Forfeiture Action, Americopters is a stranger to the allegedly illegal activities.  Nothing in the Prozik

ORIGINAL COMPLAINT AND JURY DEMAND – Page 11

affidavits or the Forfeiture Action allude to helicopters owned or operated by Americopters.  The affidavits join the names of Hansen Helicopters and Americopters without any justification.

50.     Not even Americopters' form of business or the jurisdiction in which it is formed is provided.  The only substantive statement about Americopters is that an FAA employee arranged to inspect aircraft in Saipan, where Americopters is located.  Saipan is the largest island of the Northern Mariana Islands, a commonwealth of the United States in the western Pacific Ocean, and is 120 miles from Guam.

51.     No justification was presented as to why any search warrant should be granted to obtain records and property of Americopters.  No probable cause existed for the issuance of a search warrant against the property of Americopters.  No probable caused existed for the issuance of a search warrant to obtain documents and property belonging the Hansen Helicopters and Walker from Americopters.

FAA AND SEIT

52.     An investigation of a charter aircraft crash revealed that the FAA's policies, procedures and practices resulted in a failure to detect noncompliant actions related to the crashed aircraft and the reasons for the crash.  The FAA responded that it

> established and implemented [SEIT].  SEITs have been highly successful in the detection, investigation, and prosecution of non-compliant charter operations by: 1. Providing investigative guidance and resources to FSDO investigations of noncompliant and illegal charter operations in their area of geographic responsibility; 2. Investigating or referring for investigation complaints reported to the NATA hotline; 3. Directly detecting and investigating noncompliant and suspected illegal charter operations; 4. Vetting aircraft entering part 135 service and aircraft transitioning between part 135 operators; and 5. Identifying gaps in existing policy and practice that may enable noncompliant and suspected illegal charter operations.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 12

Over time, the areas of responsibility expanded significantly. The group is identified as "SEIT," pronounced as "SEET" or "SEE IT."

53.     The FAA has jurisdiction over the civil aviation of the United States. The definition of the civil aviation of the United States includes the requirement that civil aviation be related to the territory of the United States. See 49 U.S.C. §§ 106, 40101, 40103. In documents provided by the United States in connection with the Indictmet, there are numerous false statements about where the subject helicopters operate and which directly contradict the assertion that the subject helicopters are subject to the territorial jurisdiction of the United States.

54.     FAA states that its regulatory standards were established with its compliance philosophy of enforcement in mind as follows:

> ensure safe operations in the National Airspace System. The FAA's safety system is largely based on, and dependent upon, voluntary compliance with these regulatory standards.
>
> The aviation and aerospace communities have a statutory obligation to comply with established regulatory standards. This obligation includes a duty to develop and use processes and procedures that will prevent deviation from regulatory standards.

55.     Since 2007, FAA has promulgated extensive rules governing its FAA Compliance and Enforcement Program in a series of orders identified as FAA Order 2150. The most recent version of the 2150 order is Order 2150.3C, effective on September 18, 2018. Order 2150.3C and its predecessors apply to the compliance and enforcement programs and activities of all FAA offices with statutory and regulatory compliance and enforcement responsibilities, including SEIT.

56.     Despite the provisions of Order 2150, FAA managerial control over SEIT personnel effectively does not exist except when it suits the purposes of SEIT personnel.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 13

SEIT personnel act as if they are not bound by the FAA's compliance philosophy or the 2150 Orders and other FAA regulations and orders governing the conduct of FAA employees

57.     The defendants often do not fully describe or they lie to their superiors about their illegal conduct and their self-determined bases for their recommendations to their superiors when seeking required approval for requested actions.

58.     The defendants' decisions implementing DOT and FAA policy and whether to abide by clearly established laws regarding aviation and the rights of persons under the United States Constitution and the United States Code may largely be uncontrollable, at least before the defendants act in ways that irreparably breach constitutional rights.  The allegations in this Complaint relate to instances in which the defendants have violated rights of individuals and businesses and have destroyed careers and businesses.

59.     The defendants' activities deprived the plaintiffs of their customary ways of earning a living, damaged or destroyed businesses and prevented individuals and businesses from working in aviation, all without the safeguards given by the United States Constitution and codes, federal regulations and FAA regulations and orders.

60.     Plaintiffs have been denied the procedures enacted by Congress with regard to possible violations of FAA laws and regulations and the imposition of civil penalties for such violations.  49 U.S.C. Chapter 461.  Plaintiffs have been denied the protection provided by FAA procedures with regard to possible violations of FAA laws and regulations and the imposition of civil penalties for such violations.  14 C.F.R. Part 13, Order 2150.3C and its predecessor orders.

SEIT IN OPERATION

61.     One common SEIT tactic employed against Hansen Helicopters is the unannounced inspection which includes demands for immediate inspections, and demands for information and document requests. The subjects or targets of these unannounced inspections are unaware of the basis for the demand. The targets do not know if the SEIT employee is envisioning administrative, civil or criminal action. Knowledgeable SEIT targets know that SEIT is attempting to set up a situation where the target will face the harshest penalty possible.

62.     SEIT activities include misrepresentations to obtain desired results. Other prominent misrepresentations made to plaintiffs relate to the nature of the investigation being conducted, which was represented to be a standard FAA investigation which, in fact, was part of a scheme designed to remove Walker and Hansen Helicopters from Civil Aviation by whatever means necessary.

63.     The Supreme Court in *United States v. Kordel,* 397 U.S. 1, 6 (1970) suggested that the government may act in bad faith if it brings a civil action solely for the purpose of obtaining evidence in a criminal prosecution and does not advise the defendant of the planned use of the evidence in criminal proceedings. The reasoning applies where government officials, including Dymock, Boler, Maloof and Prozik, used an administrative process to obtain information which they manipulated in deciding whether the fruits of their investigation will be used in an administrative proceeding, a civil proceeding or in a criminal proceeding or a combination of the three.

64.     The defendants decided on their desired ends and upon courses of action to guide law enforcement agencies to achieve the desired ends. The defendants provided false information to the subjects or targets of their efforts and to the persons

ORIGINAL COMPLAINT AND JURY DEMAND – Page 15

making the decisions regarding a criminal investigation and indictment or administrative or civil proceedings.

65.    SEIT inspections can and have resulted in the calamitous and unwarranted expenses to defend the subject or target from unwarranted accusations, loss of certificates, civil penalties and, ultimately, criminal proceedings.  Ultimately, many of the subjects of these investigations are unable to fight with the United States because of the enormous financial burdens faced and SEIT often achieves a "victory" not on the merits of the accusations made but by of the abuse of the system.

66.    In *Securities & Exchange Commission v. Healthsouth Corp.,* 261 F.Supp. 2d 1298, 1326 (N.D. Ala. 2003) the court discussed the abuse that can result when the same persons are conducting investigations that have civil and criminal ramifications simultaneously.

SEIT ACTIVITIES

67.    The self-created process utilized by the defendants is that DOT and SEIT employees act as investigators, prosecutors, jurors, judges and executioners in their self appointed responsibilities to eliminate "bad" guys associated with Civil Aviation.  The finality of the *ad hoc* penalties, the loss of an ability to earn an income, combined with large expenses incurred to attempt to protect oneself from SEIT effectively makes independent review impossible.

68.    The defendants' activities have been such that persons subject to SEIT activities have lost their opportunities (a) to be heard by the appropriate FAA authorities before the impact of the government's decision is permanently felt, i.e., a participatory administrative process, (b) for judicial review of the validity of the government official's action before the impact of that action becomes irreversible, and (c) fair consideration

ORIGINAL COMPLAINT AND JURY DEMAND – Page 16

by the decision makers within the involved government entities and the judicial system. These avoided opportunities theoretically ensure that effected citizens can participate in the process before the official actions becomes final and that an independent body sensitive to constitutional rights reviews the decision.

69.     The premise behind SEIT is that there are certain "special" areas of concern that required the specific emphasis of qualified FAA personnel to obtain an efficient resolution of the problems.  SEIT's history is not the story of qualified personnel giving expert opinions and guidance.  SEIT representatives do not know the FAA regulations or misrepresent the content of regulations to outsiders such as persons being investigated and federal law enforcement agencies when it suits their purposes to obtain desired results.

70.     SEIT has been given a wide ranging and vaguely described scope of responsibilities which appear to focus on areas in which "normal" FAA attention cannot resolve properly or efficiently.  FAA Order 1100.1E Chg 1, effective September 29, 2016, and according to a FAA presentation, SEIT is "[u]niquely qualified organization that is capable of supporting the Flight Standards mission by providing concentrated and focused technical support," with a number of differently described areas of responsibility.

71.     The defendants are not experts in the listed areas.  The defendants may not know how to or may just decide not to comply with FAA policies and procedures or Federal Aviation Regulations when the regulations would interfere with the defendants' efforts to eliminate their self-perceived "bad guys."

72.     As evidenced by their conduct giving rise to this lawsuit, even though they are placed in situations where SEIT acts as a law enforcement agency, the members of

ORIGINAL COMPLAINT AND JURY DEMAND – Page 17

SEIT do not understand the legal requirements of criminal investigations or choose to ignore what they do know.

PLAINTIFFS

73.    In March 2015, SEIT received a complaint about an unrelated company and, based on the false conclusions about the ownership of the helicopters operating in the Pacific Ocean from fishing ships, expanded the investigation to include Walker, Hansen Helicopters and Kapp.  The investigation involved the alleged unsafe condition of helicopters leased to fishing ships operating in the Pacific Ocean.

74.    The FAA aircraft Registry shows that Hansen Helicopters, over time, has registered 17 aircraft with the FAA.  Eleven of the aircraft were issued certificates which were canceled before May of 2000.  The certificates of five aircraft expired in 2018 or 2019.  One remains registered with the FAA.  Walker registered no helicopters with the FAA.  Kapp has had no FAA registered aircraft.

75.    Recognizing the complaint about Hansen Helicopters had to be wrong, the defendants redefined their view of Walker, Hansen Helicopters and the other plaintiffs by ignoring the reality of the Vanuatu corporations and used the names of Walker and Hansen Helicopters to refer to the Vanuatu corporation.  This redefinition has no support in law or fact.

76.    To the knowledge of the plaintiffs, not once did the defendants review the safety records of the helicopters owned by the Vanuatu corporations or seek information about helicopters actually owned by Hansen Helicopters.  In the FAA Registry of aircraft, publicly available on the Internet, the N number, and owner's name and address of every helicopter that has been mentioned by the United States in pleadings were not related to Walker and Hansen Helicopters.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 18

77.     Under 49 U.S.C. § 44709, the FAA may reinspect "at any time a civil aircraft, aircraft engine, propeller, appliance, design organization, production certificate holder, air navigation facility, or air agency . . . ."  In April 2015,  Dymock, Boler, Maloof, Prozik and other SEIT personnel were assigned to the matter and in May 2015, FAA 44709 letters were sent to Hansen Helicopters and Walker even though the FAA's records showed that Hansen Helicopters, Walker and Kapp had no relationship with the described helicopters.

78.     As was known to the defendants by an examination of FAA records, the helicopters subject to the SEIT investigation were owned by Vanuatu companies and that the FAA registration of the Vanuatu helicopters was invalid.

79.     The defendants ignored the corporate existence of the entities owning the helicopters and presented to United States Courts unsubstantiated conclusions that entities should be ignored and that the helicopters were owned and controlled by Hansen Helicopters and Walker.  The defendants knew that these statements are unsupported in fact or law.

80.     Defendants threaten persons with punishment for suspected violations if the persons fail to comply with SEIT demands in conducting investigations that, theoretically, could result in adjudicative hearings before the FAA.  Dymock openly targeted Hanson Helicopters and Walker and persons like Kapp who was associated with them.

81.     In what is believed to be standard language in a SEIT request for documents and information, Allen Geber of SEIT included threats in the § 44709 letters to Hansen Helicopters that a failure to comply, as determined by the defendants in their

unfettered discretion to find guilt and to impose their chosen penalties. The § 44709 letters include the following:

> If you do not accept this opportunity for re-inspection by the date indicated above, it will be necessary for us to take appropriate action regarding the airworthiness certificate for . . . unless other arrangements are made.

And from the Privacy Act Notice:

> B.    Principal purpose: The requested information will be used to help determine whether or not there has been a violation of the Federal Aviation Regulations, and if so, what, if any, enforcement action should be taken.

> A.    Effect of failure to respond: The FAA cannot impose any penalties upon you in the event that you fail to respond to this enforcement investigation letter. Failure to supply the requested information, however, will result in enforcement determinations without the benefit of your comments on the alleged incident."

82.    In Order 2150.3B,[1] Appendix A, the FAA provides sample documents to be used in investigations. The suggested language for the language quoted in the previous paragraph is less threatening:

> This is to inform you that the FAA is investigating this matter. We wish to offer you an opportunity to discuss the incident in person or submit a written statement within 10 days following receipt of this letter. Your statement should contain all pertinent facts and any mitigating circumstances you believe may have a bearing on the incident. If we do not hear from you within the specified time, we will process this matter without the benefit of your statement.

And, from the Privacy Act Notice:

> B.    Principal Purposes:

>> 1.    The request for information is intended to provide you with an opportunity to participate in the investigation.

>> 2.    The requested information will be used to help determine whether or not there has been a violation of the Federal Aviation Regulations, and if so, what, if any, enforcement action should be taken.

> D.    Effect of failure to respond: The FAA cannot impose any penalties upon you if you fail to respond to this letter of investigation. If you fail to supply the requested information, however, the FAA will make determinations about

---

[1]    Inserted with Order 21503B effective September 2, 2015.

possible enforcement action for this matter without the benefit of your comments on this matter.

83.    Normally, the FAA allows ten days for an owner or operator to produce for inspection an aircraft at a location convenient to the FAA and the operator or owner.

84.    The defendants know that the helicopters subject to their investigation are owned by Vanuatu companies and leased to fishing companies to operate all over the Pacific Ocean.  The defendants knew that, assuming it owned the helicopters, Hansen Helicopters could not produce the helicopters when or where as demanded.  With this knowledge, the defendants caused SEIT to demand to reinspect in Guam helicopters operated in the Pacific Ocean by the third party fishing boats at times that ignored the reality of the size of the Pacific Ocean and the relationship between the Vanuatu corporations and their customers.  In addition, the inconvenience and cost of complying imposed on the fishing companies and the Vanuatu corporations would have been such that the Vanuatu corporations business of leasing helicopters would have ended.

85.    Defendants refused to grant requests to extend the time for the providing the aircraft for inspection to times sufficient to permit the helicopters be brought to port by the fishing ships.

86.    Requests were made and declined to have helicopters inspected at locations acceptable to the third party fishing ships which were leasing the helicopters. Attempts were made to arrange inspection where the fishing ships unloaded their fish, these arrangements were refused.  In fact, the defendants assumed what they had been told about the fishing ships was lies and assumed that all of the fishing ships unloaded in Guam.  FAA superiors were advised of these false conclusions.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 21

87.     After the unreasonable demands and refusals to make reasonable arrangements to inspect the helicopters, the defendants accused Hansen Helicopters and Walker of illegally refusing to comply with SEIT § 44709 demands.

88.     The defendants lied about FAA jurisdiction over the aircraft.

89.     Rather than being uncooperative, the plaintiffs attempted to work with the FAA to obtain for the FAA access to helicopters in which they owned no interest.

90.     Dymock, Boler, and Maloof, specifically, and the John Doe defendants lied about Hansen, Walker and Kapp and the corporate owners of the helicopters to law enforcement personnel with the FBI, United States Attorney, the DOT-OIG, IRS, Customs and Border Protection, and the Department of Homeland Security.  18 U.S.C. § 1001(a).

91.     The defendants demanded inspections and documents related to helicopters not subject to FAA jurisdiction and used the difficulties in complying with the illegal demands as a basis for taking legal action against plaintiffs, even though the plaintiffs did not own the subject helicopters and the plaintiffs attempted to work with the defendants to obtain the requested inspections and documents.

92.     The defendants lied to law enforcement officials in stating that parts used to maintain the helicopters were illegal parts.

93.     The defendants lied to law enforcement officials about the responsibility of Hansen Helicopters and Walker for the allegedly illegal acts committed by the owners of the helicopters.

## SEARCH WARRANTS

94.     The false and misleadingly incomplete information provided by the defendants was utilized by Federal Law Enforcement agents to obtain illegal search

warrants, indict Walker and Kapp with no jurisdiction and with no basis in law or fact, and make meritless claims for forfeiture and to take the other illegal actions described in this Complaint.

95.    The defendants put agents of the United States Attorney, the FBI and DOT-OIG in the position of potentially being accused of submitting their perjured statements to three United States district courts to obtain search warrants.

96.    In violation of the requirements of 49 U.S.C. § 44709, the defendants lied to FAA counsel to cause emergency suspensions of the right to operate specified aircraft.

97.    Dymock falsely issued a "Condition Notice" claiming that he had observed potential unsafe conditions on a helicopter.  Dymock knew the aircraft was airworthy and acted to injure the plaintiffs.

98.    The defendants provided false information to United States Customs about Hansen Helicopters shipping containers passing through Honolulu to causing United States Customs to impound legal and proper shipments destined for Guam, Majuro and Pohnpei.

99.    The defendants provided false and misleading information to United States Customs about Phillip Kapp, preventing legal business travel in the United States, the Philippines, Pohnpei and Guam.

100.    The defendants lied to law enforcement officials, including the FBI, IRS and the DOT-OIG, about legal activities being conducted by a Georgia company which provided goods and services to Hansen Helicopters to prevent Hansen Helicopters from properly operating its legal business.

101.    The defendants' false information caused a United States Grand Jury to issue a subpoena to obtain documents from Hansen Helicopter over suspected activities over which the United States has no subject matter jurisdiction.

102.    The defendants' illegal actions are significant.  A common action of the SEIT is to seize an aircraft under 49 U.S.C. § 1473.  A seizure of an aircraft can be effectuated where the aircraft "is involved in a violation for which a civil penalty may be imposed on its owners or operator."  14 C.F.R. § 13.17.  A civil penalty may be imposed for failing to respond to a SEIT request, which justifies a seizure.  Seizure is the implied threat in the above quoted language that "it will be necessary to take appropriate language regarding the airworthiness certificate . . ." and "Failure to supply the requested information, however, will result in enforcement determinations without the benefit of your comments on the alleged incident."  In the hands of the defendants seeking to impose their self-defined justice rather than to follow rules, such threats are very significant and often result in the involuntary relinquishment of rights or the improper seizure of aircraft and the destruction of businesses.

103.    The defendants illegal actions resulted in the issuance and enforcement of illegally obtained search warrants based on lies they provided.

104.    The defendants' illegal actions resulted in the illegal seizure of moneys belonging to Walker and Hansen Helicopters by the United States.

105.    The defendants' illegal actions resulted in the illegal and erroneous impoundment by Customs of property being shipped by Hansen Helicopters.

106.    The illegal actions taken by the defendants resulted in the indictment of Walker and persons associated with Hansen Helicopters and Walker.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 24

107.    The illegal actions of the defendants resulted in the issuance of an illegal subpoena by the grand jury which was served on Hansen Helicopters.

108.    Dymock, Boler, Maloof and Prozik have taken unreasonable steps to prevent plaintiffs from traveling on false grounds and knowing the Court does not have jurisdiction over the claims made the Indictment.  Such actions are part of the continuing efforts to punish the plaintiffs for perceived wrongs which are not subject to the jurisdiction of the United States.

109.    The defendants conduct investigations and threaten and take actions against persons known to be acting outside the jurisdiction of the United States as defined by the FAA.  14 C.F.R. § 1.1.

110.    The aircraft which the defendants purport to be the subject of the SEIT actions were owned by companies formed in foreign countries and were not operated in the territory of the United States, and were not eligible to be registered in the United States, and were not validly registered in the United States with the FAA.  14 C.F.R. § 47.3.  Such aircraft are not subject to the requirements for airworthiness certificates and are not subject to SEIT investigations or enforcement activities.  14 C.F.R. § 91.203.  All this was known to the defendants.

111.    The defendants used the relationships between SEIT and other agencies, including law enforcement agencies, to utilize investigatory tools and enforcement tools, such as subpoenas, that are not available to SEIT.  In at least three instances, in providing a law enforcement "technical" knowledge and knowledge of the supposed "bad guy," the defendants lied to provide justification for a search warrant.

112.    The defendants used the relationships between SEIT and other agencies to utilize remedies available to those agencies that are not available to SEIT.  In at least one

ORIGINAL COMPLAINT AND JURY DEMAND – Page 25

instance, the defendants lied to United States Customs personnel to obtain the illegal seizure of property that SEIT had no right to seize and which was known not be be in violation of the laws enforced by United States Customs.  After the illegal seizure of the property, the defendants convinced United States Customs not to return the illegally and erroneously seized property with the result that the United States has lost the property.

113.    The defendants used the relationships between SEIT and other agencies, including law enforcement agencies, to punish persons Dymock, Maloof, Boler, Prozik and the John Doe defendants believe are bad guys.  In at least one instance, the defendants lied to the FBI and attorneys of the United States Attorney's Office to obtain search warrants directed to obtain documents from or about perceived bad guys.

114.    In their dealings with federal law enforcement agencies, the defendants regularly made false statements under the provisions of 18 U.S.C. § 1001 to obtain desired results, results that SEIT has no authority to obtain and which are fraudulent as no basis exists for issuance of the indictments.

INTERNAL REVENUE SERVICE

115.    On February 5, 2018, Viranousith Khamvongsa, Special Agent of the Internal Revenue Service, submitted his affidavit supporting his Application for a Warrant to Seize Property Subject to Foreclosure.  Like Prozik and Bishop, Khamvongsa relied on Dymock and the results of the illegal search warrants obtained based on the defendants' falsehoods.

116.    In the Application, it is alleged that "According to Doug Dymock . . . a safety inspector cannot, in good faith, properly inspect and issue airworthiness certificates for ten helicopters in one day, especially since four of the helicopters were involved in previous accidents, including one helicopter considered damaged beyond

repair, prior to CISLO issuing the aircraft an airworthiness certificate." This allegation is false and based on lies and misrepresentations made to Khamvongsa of the Internal Revenue Service.

117.    FAA Order 8130.2J, effective July 21, 2017, sets forth the standards for Airworthiness Certification of Aircraft. The required standards for inspections and issuance of airworthiness standards of used aircraft are not onerous or time consuming. See FAA Order 8130.2J, Chapter 3. Ten helicopters airworthiness inspections could be completed a day even with a history of damage to the helicopters.

118.    The records of the damaged helicopters inspected on February 27, 2015, using the information provided by the defendants, show that the helicopters were damaged on June 20, 1997 (almost 18 years before the inspection), December 31, 1999 (almost 16 years before the inspection) and September 19, 1975 (almost 40 years before the February 27, 2015 inspection).

119.    The defendants attach purported significance to the fact that helicopters had been previously damaged. The helicopters had been damaged years before and had been functioning for a number of years seemingly under certificates of airworthiness which Dymock does not complain should have not been issued.

120.    The helicopters were inspected both in February 2015 and subsequently, as listed by the United States, based on information provided by the defendants, were damaged on the following dates: (a) December 6, 1997, (b) 2002, (c) August 2004, (d) September 19, 1975, (e) December 31, 1999, (f) October 6, 2004, (g) August 2004, (h) 2002, and (i) June 20, 1997.

ORIGINAL COMPLAINT AND JURY DEMAND – Page 27

121.    In the Application, the United States seized moneys related to purported violations of inapplicable United States laws and FAA regulations related to aircraft operated and registered in the United States.

## INDICTMENT

122.    The United States indicted plaintiffs Walker, Kapp and others after a long sequence of illegal activities by defendants, including the false statements of the defendants which were necessary for the United States to indict the named persons. The entire indictment is based on a fundamental falsity, that the United States has jurisdiction over the described helicopters, which the defendants knew it did not during the entire time he took actions that were designed to destroy Hansen Helicopters, John Walker and those close enough to them for the defendants to conclude they should be punished.

## CONSPIRACY

123.    Defendants  conspired and agreed with each other and unknown others, to injury and damage the plaintiffs by accusing them of committing illegal acts under the laws of the United States, which the defendants knew was not or reasonably should have known was not true and with knowledge that the relied upon laws of the United States did not apply to the facts, that plaintiffs were not liable for the alleged actions of third persons, and which relied upon making false statements to the courts of the United States.  The defendants have specific intent to injure the plaintiffs.

## PLAINTIFFS' CLAIMS

124.    This case is brought pursuant to, *inter alia*, the Fourth, Fifth, Sixth and Eighth Amendments to the United States Constitution; *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

ORIGINAL COMPLAINT AND JURY DEMAND – Page 28

125.    As alleged, the plaintiffs have constitutionally protected rights which defendants, federal officers acting under the law, violated, and the plaintiffs lack statutory causes of action against the defendants and/or an appropriate remedy of damages.

126.    The defendants' wrongful actions go to the very core of the protections given under the Fourth Amendment.  The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and **no** Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

127.    The affidavits submitted by agents of the FBI, Prozik, and DOT-OIG, Bishop, in seeking to have three United States Judges issue illegal and defective search warrants because their affidavits submitted rely upon material information that the Agents received from the defendants which were lies or misleadingly incomplete due to omissions of the defendants.

128.    After receipt of an authorized search warrant affidavit, a United States Magistrate must issue a requested search warrant if there is probable cause to search for property.  The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the `process that is due' for seizures of person or property in criminal cases.

129.    There must be a determination of probable cause by a neutral magistrate. By submitting lies supporting the search warrant requests made by authorized law enforcement agents, the defendants gutted the protections of the Fourth Amendment requirement of probable cause reviewed by an independent judicial officer.  This

ORIGINAL COMPLAINT AND JURY DEMAND – Page 29

violation goes to the very core of the protections granted by the Fourth Amendment of the United States Constitution.

130.     Part of the requirements for the issuance of a search warrant is credibility. Where an affidavit contains information from another governmental source recited by the law enforcement officer seeking the search warrant, the statements related to the government source are deemed inherently credible.  Prozik, Dymock, Boler, Maloof knew and anticipated that Dymock's described false statements to federal law enforcement officers would be accepted by the United States Magistrates, which they were.  Abusing this inherent credibility, the defendants lied and violated plaintiffs' rights.

131.     On the question of the veracity of affidavits submitted in accordance with the requirements of the Fourth Amendment, the Supreme Court in *Franks v. Delaware,* 438 U.S. 154, 168 (1978) noted: "The requirement that a warrant not issue 'but upon probable cause, supported by Oath or affirmation,' would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile."

132.     Prozik executed affidavits on or about October 24, 2016, affidavits supporting requests to issue search warrants against Hansen Helicopters and Americopters.  Prozik states that he relied on Dymock for information.

133.     Bishop of DOT-OIG executed an affidavit submitted to the United States District for the Middle District of Georgia at about the same time.

134.    The affidavits failed to provide information or justification required to demonstrate that the Court had jurisdiction to issue the requested search warrants. Prozik knew that there was an issue as to subject matter jurisdiction.

135.    The affidavits failed to provide any information or justification for ignoring the ownership of the subject helicopters by Vanuatu corporations.  Prozik and Bishop swore the registrations by the Vanuatu were invalid.

136.    The affidavits failed to provide any information or justification for the statement that Walker and/or Hansen Helicopters owned the helicopters or why the invalid registrations of the Vanuatu corporations could be imputed to Walker and/or Hansen Helicopters.

137.    The affidavits failed to provide information or justification for statements that the subject helicopters are subject to the laws of the United States or acted illegally in the territory of the United States.

138.    Prozik and Bishop made the following false statements, among others, to the Courts:

a.    The meaning of FAA regulations regarding registration and airworthiness,

b.    The significance of unapproved parts under FAA regulations,

c.    That described parts were unairworthy,

d.    That the Vanuatu corporations "the companies operate U.S. registered helicopters in accordance with aerial survey provisions in FAR Part 119(e)(4)(iii),"

e.    "All the operations are based within the Territories of the United States under several company names, all of which are owned and operated by Jon Darrell Walker,"

f.     That Hansen Helicopters and/or Walker owned the listed companies, and

g.     That the "Operation of an aircraft in this instance would be contrary to § 91.203(a)(2)."

139.     The defendants have gutted the protection of the Fourth Amendment by the false statements submitted to United States Magistrates to obtain unsupportable search warrants, all in violation of the plaintiffs' rights.

140.     Prozik, Boler, Dymock, and Maloof knew the statements were false and made such statements in the course of the conduct designed to destroy Hansen Helicopters and Walker and those associated with them as Dymock promised.  These statements were made to mislead three United States Judges to whom the requests for search warrants were presented.

141.     At the core of the statements seeking to justify the search warrants is that Hansen Helicopters and Walker somehow violated the law in having repair work performed on helicopters they owned which, at worst, should have been registered outside the United States by a facility owned by a third person in Georgia.  These assertions were false and were made by Dymock and to mislead Bishop and the United States Judges to whom the request for a search warrant was presented.

142.     False statements were provided by Dymock, Boler and Maloof to advance the illegal and improper campaign to destroy Hansen and Walker.

143.     Contrary to the requirements of the Fifth Amendment, the defendants have deprived the plaintiffs of their rights to an independent, neutral adjudicator.

144.     By their actions, which violated the procedures of the FAA, the defendants have deprived plaintiffs of their right to have matters reviewed by a decision maker who is given full access to facts without misrepresentation.  For example, the plaintiffs must

assume that there exist in the FAA, FBI and Department of Transportation supervisory personnel who understand the concepts of territorial jurisdiction and the limited application of FAA laws and regulations to aircraft with a defined nexus with the United States.  Due to the defendants' actions, plaintiffs have been deprived of such rights.  It is contrary to the structure of the United States that persons must deal with government agencies with no restraints regarding the rights of such persons with the hope that such persons have the ability to contest illegal actions taken by such persons in the courts.

145.    Further, by the means that the defendants approached the plaintiffs as "bad guys," the plaintiffs were denied access to the FAA adjudicative process when, based on false information and misrepresentations, the emphasis turned to criminal remedies.

146.    The defendants have denied the plaintiffs of any due process by acting as the investigators, prosecutors, adjudicators and executioners.  After spending large sums of money complying with illegal search warrants, improper grand jury subpoena, an indictment over which the Court has no subject matter jurisdiction and baseless civil litigation, the only reason the plaintiffs have not been destroyed as intended by the defendants is that they are not willing to have their businesses be destroyed by illegal acts of employees of the United States government and they have the resources, to date, to fight to protect themselves.  This circumstance does not comply with the due process requirements of the Fifth Amendment.

147.    The defendants' acts as alleged in the Complaint violate the plaintiffs' rights as persons accused of wrong-doing by the United States and constitute unusual punishment in that the plaintiffs have been and are being punished before any Court has

had the opportunity to adjudicate the claims made against by the United States which have resulted from the illegal activities of the defendants.

DAMAGES

148.    Plaintiffs have suffered damages of at least $25,000,000 in terms of lost income, expenses incurred to rebuild their businesses, expenses in addressing issues raised by defendants' illegal actions, losses incurred from relationships destroyed by the defendants' illegal actions and other damages.  Plaintiffs seek a joint and several judgment against the defendants.

149.    Plaintiffs seek exemplary damages against each defendant of $10,000,000.

THEREFORE, Hansen Helicopters, Inc., John D. Walker, Jr., and Phillip T. Kapp demand judgment against Douglas Dymock, Zurvohn Maloof, Michael Boler, Peter Prozik and five unknown agents of SEIT, FBI and/or OIG-DOT, John Does 1-5, the sums set forth above, interest and costs.

Respectfully submitted,

BENNETT, WESTON, LAJONE & TURNER, P.C.

/s/ J. Michael Weston
J. Michael Weston, SBN: 21232100
jmweston@bennettweston.com
1603 LBJ Freeway, Suite 280
Dallas, TX 75234
T. 214.691.1776, ext. 262
F. 214-373-6810
jmweston@bennettweston.com

McCONWELL LAW OFFICES

/s/ Edward A. McConwell
Edward A.  McConwell, SBN: 13450340
5201 Johnson Drive, Suite 300
Mission, KS  66205
T. 913-262-0605
F. 913-262-0652
ed@mcconwell.com